**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DANIEL PRICE,

    Plaintiff,

v.                                        Case No. 14-11858

COUNTY OF OAKLAND, *et al.*,

    Defendants.
                                          /

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE**

Pending before the court are a Motion for Summary Judgment filed by Defendants County of Oakland, Michael J. Bouchard, and Mark Ferguson on December 8, 2014 (Dkt. # 25) and a Motion to Strike and an Amended Motion to Strike filed by Plaintiff Daniel Price on January 20, 2015 (Dkt. ## 34, 35). Having reviewed the briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant the Motion for Summary Judgment and deny the Motion to Strike as moot.

**I. BACKGROUND**

The relevant underlying facts are not in dispute and are drawn in the light most favorable to Plaintiff, the non-moving party.

**A. The Warehouse**

Plaintiff rented a warehouse at 2628 Williams Drive, Waterford Township, County of Oakland, Michigan, from Duane Presson, who also owned Detroit Suburban Lawn Cutting Co. ("Detroit Suburban"). The warehouse was located behind Detroit Suburban. The warehouse comprises four small rooms, a bathroom, and a large open space. There is an entry door at the east end of the building with a vent above and to the left of

the door and a louvered vent to the far left. On the west end of the warehouse, there is a rollup garage door and a louvered vent to the right. The north side of the building has no doors, windows, or vents, but does contain an air conditioning unit; there are two small holes, approximately eighty-three inches above the ground, which Plaintiff plugged using rags. The south side of the building butts up to a fence, and has no doors or windows.

Plaintiff grew "medical marijuana" in rooms located toward the east end of the building. Ventilation occurred by way of an exhaust fan which ran on a timer from midnight to noon. The fan blew the air out of the rooms into the open space, which then exhausted up and out through the roof.

### B. The Tips

Marc Walker was a long-time employee of Detroit Suburban. Walker became aggravated at the parking situation resulting from Plaintiff's occupation of the warehouse. On one occasion, Walker's car had been blocked by vehicles belonging to the warehouse's occupants. Walker went inside to ask that the vehicles be moved. While inside, Walker observed what he thought to be marijuana. Walker sent an anonymous letter to the Oakland County Sheriff's Department, but received no response. However, Detective Keith Zarembeski received an anonymous tip, presumably Walker's letter, and passed that information on to Defendant Ferguson.

Some days after Walker sent the letter, Pontiac Police Officer Ryan Roberts was at Detroit Suburban to have his personal lawnmower repaired. Walker told Roberts that he believed marijuana was being grown in the warehouse. Roberts told Walker that he would give the information to somebody who handled that sort of complaint. Later that day, Roberts called Defendant Ferguson and passed on the complaint.

### C. The Warehouse Exterior Search and Dog Sniff

As a result of the tips, on the evening of June 5, 2011, Ferguson, along with Detective Michael Pankey and Deputy Michael Richardson, as well as Richardson's K-9, "Blitz," went to the warehouse. Blitz was trained to detect narcotics and certified by the National Association of Professional K-9 Handlers. All three officers claim to have smelled marijuana in the air as they exited their vehicles and walked around the warehouse. Richardson had Blitz conduct a sniff of the warehouse. Blitz was "air scenting" as he approached the building, indicating that he was following an odor. Blitz exhibited a final response on both the bottom seam of the door on the east side of the building and the bottom of the rollup door on the west side of the building. The final response indicated the odor of narcotics.

### D. The Affidavit, Search, and Criminal Proceedings

The next day, June 6, 2011, Ferguson swore out an affidavit seeking a search warrant of the warehouse. The affidavit included information about the tip, the officers' observations, and Blitz's response. In addition, the affidavit contains a statement that marijuana was observed through a holes on the north wall, which was "5 feet from the ground."

Judge Jodine Debbrecht Switalski, relying upon the affidavit, issued a search warrant which was executed the same day. Detectives found over five pounds of marijuana. Plaintiff was charged with manufacturing and possession with intent to distribute. At the preliminary examination on October 5, 2011, Ferguson testified that the hole was seven feet above the ground, rather than five, and that he had to stand on a bucket to look into the building. Plaintiff alleged that Ferguson would have necessarily had to remove a rag from the hole to see inside the warehouse.

Plaintiff filed a motion to suppress based on the omitted and inaccurate testimony. On April 18, 2012, Judge Shalina Kumar conducted an evidentiary hearing,

3

and found that even excluding the testimony regarding the observation through the hole, probable cause existed. Accordingly, Judge Kumar denied the motion to suppress.[1] On January 25, 2013, the Oakland County Prosecutor's Office filed a petition to Nolle Prosequi the criminal charges. The court entered the order and the charge was dismissed.

### E. The Instant Action

On May 9, 2014, Plaintiff filed the instant action under 42 U.S.C. § 1983 and Michigan Law, alleging violations of the Fourth, Fifth, and Fourteenth Amendments for False Arrest, False Imprisonment, and Malicious Prosecution. Defendants move for summary judgment, arguing that probable cause supported the affidavit, or in the alternative that the officers are entitled to qualified immunity.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks

---

[1] Defendants also provide an affidavit from Judge Switalski which states that the court would have issued the search warrant even without the information regarding the observations. Plaintiff moves to strike the affidavit as a sanction for non-disclosure. This court, however, does not in any way rely on the affidavit, rendering moot the motion to strike.

whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

5

*Franks v. Delaware*, 438 U.S. 154 (1978) provides the framework for challenges to the validity of an affidavit of probable cause. *Franks* applies in the context of civil litigation as well as criminal. In order to succeed in a § 1983 action arguing false statements or the omission of information from a search warrant affidavit, a plaintiff must show that the officer engaged in deliberate falsehood or reckless disregard for the truth. *Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005). Once a showing is made that material facts were omitted, the court then considers "the affidavit including the omitted portions to determine whether probable cause still exists." *Id.* (quoting *United States v. Atkin,* 107 F.3d 1213, 1217 (6th Cir.1997))*.*

Assuming, *arguendo*, that Ferguson's inaccuracies and omissions were made with reckless disregard for the truth, the affidavit without those inaccuracies and including the omissions still contains ample evidence to support a finding of probable cause. In particular, the undisputed evidence includes Walker's tip, the officers' unanimous uncontroverted testimony about the smell of marijuana they noticed as they walked around the warehouse, and Blitz's final alerts at both the east and west doors.

Plaintiff quibbles with when exactly Detective Pankey would have been able to smell marijuana; when he stepped out of his vehicle or near the doors. Plaintiff also makes much of his assertion that the ventilation would not have been running at the time the officers walked around the warehouse. However, all three officers testified regarding the very strong smell of marijuana they experienced, which is sufficient for the purposes of establishing probable cause. Plaintiff's assertion that the officers would have been unable to smell marijuana from outside the warehouse while the ventilation

6

system was not running is unsupported by evidence; it is, therefore, merely an argument.

Plaintiff also asserts that the Officers illegally entered the building during their June 5 perimeter search. He bases this assertion on the fact that the lock to the warehouse door was missing when he arrived on June 6. He also relies on the testimony of a Bruce Morris, who testified that he observed from a bar across the street shadows of the officers (although not their physical selves) on the east wall of the warehouse. After repositioning himself, he could no longer see the shadows (and still could not see the officers), and concluded that the officers must have entered the warehouse. However, Morris admits he never saw the officers do anything to the door or enter the building. Furthermore, even if true, this set of facts does not vitiate the probable cause established by the evidence included in the affidavit.

Plaintiff provides a lengthy argument discounting the reliability of dog sniff evidence. First, he relies on Justice Souter's dissent in *Illinois v. Caballes*, 543 U.S. 405 (2005), which argues that dog sniffs are unreliable. This lone dissent, of course, is not the law. Plaintiff next turns to *United States v. One Million Thirty-Two Thousand Nine Hundred Eighty Dollars in U.S. Currency ($1,032,980.00)*, 855 F. Supp. 678 (N.D. Ohio 2012). In that case, the verbatim quoting of which required Plaintiff to devote three pages of his 32-page brief, the court analyzed several decisions of state courts regarding the reliability of dog sniffs for establishing probable cause. The first of these decisions was *Harris v. Florida*, 71 So. 3d 756 (Fla. 2011), *rev'd* 133 S. Ct. 1050 (2013). Absent from Plaintiff's brief, however, is any mention of Supreme Court's unanimous reversal of *Harris*. Plaintiff's attempt to discredit the value of Blitz's alerts is commensurately discredited.

7

*Harris* holds that "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 133 S. Ct. 1050, 1057 (2014).  Plaintiff does not challenge Blitz's certification. Therefore, applying the rule of *Harris*, even discounting all three officers' uncontroverted testimony that they smelled marijuana, the search warrant was supported by probable cause.  Plaintiff points out that Blitz's "air scenting" on its own would not have been sufficient to support a finding of probable cause.  While this may be true, the fact that Blitz gave final alerts at both ends of the warehouse is more than sufficient.  As such, none of Plaintiff's claims can stand.  The court declines Plaintiff's invitation to ignore Supreme Court precedent by following an explicitly rejected series of lower court cases. Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment (Dkt. # 25) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike and Amended Motion to Strike (Dkt. ## 34, 35) are DENIED AS MOOT.

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  March 3, 2015

8

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 3, 2015, by electronic and/or ordinary mail.

                                                   s/Lisa Wagner
                                                   Case Manager and Deputy Clerk
                                                   (313) 234-5522